United States District Court
Southern District of Texas
**ENTERED**
December 24, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### LAREDO DIVISION

| | | |
|---|---|---|
| **GOLNAZ ZAMANPOUR, *et al.*,** | § | |
| | § | |
| **Petitioners,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:25-CV-00224** |
| | § | |
| **ORLANDO PEREZ, *et al.*,** | § | |
| | § | |
| **Respondents.** | § | |

## <u>MEMORANDUM & ORDER</u>

Pending before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), filed by Petitioners Golnaz Zamanpour and Mahsa Karimaghaee. Petitioners are a mother and daughter from Iran who fled religious persecution and have been held in immigration detention for nearly one year since their arrival in the United States. (Dkt. 1 at 13; Dkt. 21 at 2–3.) An immigration judge granted them withholding of removal on May 21, 2025, prohibiting their removal to Iran. (Dkt. 1 at 3–4; Dkt. 21 at 3.) Petitioners have remained in custody while DHS has sought to remove them to another country and have filed this habeas action seeking release. (*See* Dkt. 1.) Having considered the parties' filings and the applicable law, the Court concludes that Petitioners' detention has become unreasonably prolonged in violation of their due process rights.

Accordingly, the Petition for Writ of Habeas Corpus is GRANTED. Respondents are ORDERED to release Petitioners from custody on or before **December 26, 2025**, subject to reasonable conditions of supervision. The Parties must notify the Court of the status of Petitioners' release by **5 P.M. Central Standard Time (CST) on Monday, December 29, 2025**.

## Background

Petitioners Golnaz Zamanpour ("Ms. Zamanpour") and Mahsa Karimaghaee ("Ms. Karimaghaee") are a pair of Iranian citizens, a 44-year-old mother and 22-year-old daughter respectively, who fled Iran due to persecution they experienced on account of their religion. (Dkt. 1 at 11; Dkt. 21 at 2–3.) Petitioners are converts to Christianity who were arrested and tortured by Iranian authorities after they raided Petitioners' family home and underground Christian church. (Dkt. 1 at 13; Dkt. 21 at 2–3.) Ms. Zamanpour and Ms. Karimaghaee both entered the United States without inspection on or about December 28, 2024, and were apprehended by immigration authorities shortly after arriving in the United States. (*See* Dkt. 1 at 13, Dkt. 21 at 2–3.) The Department of Homeland Security (DHS) placed Ms. Zamanpour and Ms. Karimaghaee in removal proceedings by filing a Notice to Appear. (*See* Dkt. 21, Attachs. 2, 3.)[1] On January 3, 2025, Petitioners were transferred to the Laredo Processing Center in Webb County, Texas where they remain detained. (*See* Dkt. 1 at 11; Dkt. 21 at 3.)

Ms. Zamanpour, along with Ms. Karimaghaee as her rider, applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). (*See* Dkt. 1 at 11, 13; Dkt. 21 at 3.) Petitioners' application for withholding of removal under section 241(b)(3) of the Immigration and Nationality Act (INA) to Iran was granted by an Immigration Judge (IJ) on May 21, 2025. (Dkt. 1 at 13, Attach. 1; Dkt. 21 at 3); *see* 8 U.S.C. § 1231(b)(3). In granting withholding of removal, the IJ determined that Ms. Zamanpour and Ms. Karimaghaee are more likely than not to suffer persecution if removed to Iran. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16. Additionally, the IJ simultaneously entered an order of removal in Petitioners' file without

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

designating an alternative country of removal. (*See* Dkt. 1 at 13, Attach. 1; Dkt. 21 at 3.) Both Petitioners and DHS waived appeal of the IJ's decision. (Dkt. 1 at 13, Attach. 1; Dkt. 21 at 3.) At the close of Petitioners' hearing, the IJ indicated to Petitioners that they would likely be released from custody within a few days of being granted withholding of removal; instead, Ms. Zamanpour and Ms. Karimaghaee have remained detained by DHS for over 200 days since. (Dkt. 1 at 13–14, Attachs. 2, 3.)

Withholding of removal is a form of immigration relief that requires the Government not to remove a noncitizen to a country where she has shown a sufficient likelihood of persecution, although it does not guarantee relief from removal to an alternative country. 8 U.S.C. § 1231(b)(2)(E); *see generally* 8 U.S.C. § 1231(b) (providing the framework for designation). However, relatively few noncitizens granted withholding of removal have successfully been removed to alternative countries historically. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (addressing the contention that "DHS often does not remove an alien to an alternative country if withholding relief is granted" and "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country").

DHS policy has generally been to release noncitizens granted withholding of removal or CAT protection subject to conditions of supervision. *See* U.S. Dep't of Just., Detention and Release During the Removal Period of Aliens Granted Withholding of Removal or Deferral of Removal (Apr. 2, 2000), https://perma.cc/MDW6-RQS5. But in February of 2025, DHS issued a policy directive instructing the Enforcement and Removal Operations (ERO) division of ICE to review the cases of noncitizens granted withholding of removal or protection under CAT "to determine the viability of removal to a third country and accordingly whether the alien should be re-detained." February 18, 2025, DHS Policy Directive on Expedited Removal and Nondetained Docket (Feb.

18, 2025), https://perma.cc/T8TV-GT84; *see also D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F.

Supp. 3d 355, 367 (D. Mass. 2025); (Dkt. 1, Attachs. 4, 5, 6.)

Ms. Zamanpour and Ms. Karimaghaee have now been in ICE custody for almost one year

since they entered the United States with the intent to seek protection (*See* Dkt. 1 at 13; Dkt. 21 at

3.) Both have made several requests to DHS for information about their detention and potential

release. (Dkt. 1 at 14.) In June of 2025, Petitioners report that they were told by a deportation

officer that instead of being released from custody, DHS would seek to remove them to a country

other than Iran, typically referred to as "third country" removal. (*Id.*, Attachs. 2, 3.) In August of

2025, Petitioners again asked about efforts to remove them to a third country, and they were told

that DHS was actively searching for a third country to receive them but did not specifically identify

a country, other than mentioning to Petitioners that "they would try to send [them] to a country

near Iran." (*Id.*, Attachs. 2, 3.) On September 29, 2025, ICE issued a decision to continue detention

which stated that jurisdiction over detention decisions would transfer to ICE Headquarters, ERO

Removal Division for additional review in three months' time.[2] (Dkt. 21 at 3–4, Attach. 4.) As of

their most recent filing, Petitioners contend that they have yet to receive such a review despite the

passage of more than 180 days of post-removal-order detention. (*See* Dkt. 1 at 13–14; Dkt. 22 at

22–23.)

Ms. Zamanpour and Ms. Karimaghaee subsequently filed the instant habeas action on

November 18, 2025. (Dkt. 1.) Their petition asserts three claims for relief. (*Id.* at 21–23.) First,

they claim that their detention is in violation 8 U.S.C. § 1231(a) of the Immigration and Nationality

---

[2] In their reply, Petitioners state that "they did not receive a custody review in September of this year, and did not speak with a detention officer regarding their custody review or Decision to Continue Detention. They deny that they ever received a copy of [Dkt. 21, Attach. 4] . . . ." (Dkt. 22 at 22 n.5.)

Act. (*Id.*) Second, they claim that their detention has become indefinite in violation of the Due Process Clause of the Fifth Amendment because removal is not reasonably foreseeable. (*Id.*) Finally, Petitioners' claim that removal to an undisclosed third country would violate their rights under the Due Process Clause. (*Id.*). Ms. Zamanpour and Ms. Karimaghaee ask the Court to grant declaratory and injunctive relief and order their immediate release from immigration detention. (*Id.* at 23–24.) Petitioners also filed an Emergency Motion to Award the Writ or Issue an Order to Show Cause, (Dkt. 3), which the Court granted on November 29, 2025, (Dkt. 9), ordering Respondents to show cause and respond to the habeas petition within seven days.

Respondents moved to dismiss Petitioners' habeas petition for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. (Dkt. 21 at 1); *see* Fed. R. Civ. P. 12(b)(1), (b)(6). Respondents argue that Petitioners' claims should be dismissed because (1) their action is premature because it was filed prior to the elapse of the six-month presumptive detention period for post-removal-order detention, (2) Petitioners are lawfully detained by ICE pending removal to a third country, and (3) because Petitioners have failed to exhaust administrative remedies. (Dkt. 21 at 1.) Respondents assert that "ICE avers that there is significant likelihood of removal in the reasonably foreseeable future." (*Id.* at 9.)

As of the date of this Order, Ms. Zamanpour and Ms. Karimaghaee remain detained at the Laredo Processing Center in Webb County, Texas, and there is no evidence that any country has communicated an intent to accept them. (*See* Dkt. 1 at 3; Dkt. 21, Attach. 1.)

### Legal Standard

A. **28 U.S.C. § 2241**

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 28 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Accordingly, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id*. (citing 28 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Habeas is "the basic method for obtaining review of continued *custody after* a deportation order had become final" and is available "as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 687–88 (citation omitted). "Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question." *Id*. at 699 (citing 28 U.S.C. § 2241(c)(3)).

Moreover, a court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v.*

*Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citations omitted).

### B.  Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The burden of establishing subject-matter jurisdiction rests on the Petitioner. *See Hartford Ins. Group v. Lou–Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

### C.  Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). But when a party has filed for the writ of habeas corpus "[a] motion to dismiss for failure to state a claim is an inappropriate practice in habeas." *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (citing *Browder v. Director, Dep't of Corrections of Ill.,* 434 U.S. 257, 269 n.14 (1978)).

### Discussion

The Court considers Petitioners' claims that their post-removal-period detention by immigration authorities has become unreasonably prolonged in violation of the INA and their rights under the Due Process Clause. (Dkt. 1 at 1.) Petitioners raise an additional claim that Respondents should be prohibited from removing Ms. Zamanpour and Ms. Karimaghaee to a third

country without affording them notice and an opportunity to be heard regarding removal to the third country. (Dkt. 1 at 1.) Respondents counter that Petitioners' continued detention is lawful pursuant to the framework established by the Supreme Court for post-removal detention in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that Petitioners' claims should be dismissed because (1) their action is premature because it was filed prior to the elapse of the six-month presumptive detention period for post-removal-order detention, (2) Petitioners are lawfully detained by ICE pending removal to a third country, and (3) because Petitioners have failed to exhaust administrative remedies. (Dkt. 21 at 1.) The Court addresses each of these arguments in turn after first examining its jurisdiction over Petitioners' claims.

### A.  Subject Matter Jurisdiction

The primary federal habeas corpus statute confers federal subject matter jurisdiction over habeas petitions filed by noncitizens who claim they are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas,* 533 U.S. at 687. However, the REAL ID Act of 2005 divested federal courts of jurisdiction over various important categories of immigration cases. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005); 8 U.S.C. § 1252. Specifically, district courts may not review challenges to final orders of removal, the Attorney General's discretionary decision to detain a noncitizen, or questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States." *See* 8 U.S.C. §§ 1252(a)(5), (a)(2), (b)(9), (e); *Texas v. United States*, 126 F.4th 392, 417 (5th Cir. 2025); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). Additionally, no federal court may review claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).

But the Supreme Court has recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (internal alterations omitted) (citing *Demore*, 538 U.S. at 516). Moreover, the Supreme Court has rejected a broad reading of certain jurisdiction-stripping provisions, cautioning that "[i]nterpreting "arising from" in this extreme way would also make claims of prolonged detention effectively unreviewable." *Id.* at 293. Therefore, federal courts retain "jurisdiction to review [a noncitizen's] detention insofar as that detention presents constitutional issues," *Oyelude,* 125 F. App'x at 546; *see also Nielsen v. Preap,* 586 U.S. 392, 401–02 (2019); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself").

Moreover, "Section 1252(g) does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g).'" *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (citation omitted); *see also Sagastizado v. Noem (Sagastizado II)*, 2025 WL 2957002, at *7–8 (S.D. Tex. Oct. 2, 2025). Likewise, "where review of an agency determination involves neither a determination as to the validity of the [petitioners'] deportation order[] or the review of any question of law or fact arising from their deportation proceedings, § 1252(a)(5) and (b)(9) should not operate as a bar to the district court's review." *Duarte v. Mayorkas*, 27 F.4th 1044, 1056 (5th Cir. 2022).

Petitioners argue that their post-removal-period detention while DHS attempts to remove them to a third country has become indefinite. Petitioners do not contest any aspect of their underlying removal orders, the discretionary decision to detain them pending removal, or the decision by DHS to execute their removal. Respondents raise the argument that the Court may not "review which country ICE is considering for removal, because those negotiations are inextricably intertwined with ICE's unreviewable authority to execute final orders of removal." (Dkt. 21 at 7 n.3) (citing *C.R.L. v. Dickerson, et al.*, 2025 WL 1800209, at \*2-3 (M.D. Ga. June 30, 2025) and *Diaz Turcios v. Oddo*, 2025 WL 1904384, at \*5 (W.D. Pa. July 10, 2025))). But review of the constitutionality of Petitioners' continuing detention does require the Court to wade into ICE's negotiations or decision-making process for identifying countries to which Petitioners could be removed.

Thus, Petitioners' prolonged detention claim is not barred by § 1252, and the Court retains jurisdiction to determine whether continued detention by DHS as it attempts to remove them to a third country violates their due process rights. *See Villanueva v. Tate*, 2025 WL 2774610, at \*5–6 (S.D. Tex. Sep. 26, 2025) ("challenges the government's authority to hold [Petitioner] in detention indefinitely while it tries to find a third country that will accept him . . . [is] not barred.")

### B.  Limits on Post-Removal-Period Detention Under *Zadvydas*

Petitioners argue that their post-removal-order detention by immigration authorities has become unreasonably prolonged in violation of the INA and their due process rights given that Ms. Zamanpour and Ms. Karimaghaee's detention has stretched for over 200 days, or approximately eight months, since their removal orders became final on May 21, 2025. (*See* Dkt. 1.)

Pursuant to § 1231, once an IJ issues a removal order and that order becomes "final," the Attorney General has ninety days to affect the detainee's departure from the United States. *See* 8 U.S.C. § 1231(a)(1)(A); *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) *cert. denied*, 549 U.S. 1132 (2007). The beginning of the removal period is calculated to be the latest of "(i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). In general, during this 90-day removal period, the detainee must remain detained. 8 U.S.C. § 1231(a)(2). If the detainee is not removed within that 90-day period, he may become eligible for supervised release until removal can be accomplished or DHS may continue to detain him for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas,* 533 U.S. at 689; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 385 (2005); 8 U.S.C § 1231(a)(3).

But post-removal-period detention must comport with constitutional limits. The Supreme Court has recognized "permitting indefinite detention of an alien would raise a serious constitutional problem" and that "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas,* 533 U.S. at 690. Thus, the Supreme Court held in *Zadvydas* that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Id.* at 699. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* (citations omitted).

In order to guide lower courts reviewing the reasonableness of continued detention, the Supreme Court determined that there is a presumably reasonable period of six months of detention

from the time that a removal order becomes final. *Id.* at 701. After six months have elapsed, once a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the respondents do not offer sufficient rebuttal evidence once a habeas petitioner has made such a showing, then the court should grant the writ and order the habeas petitioner released under the *Zadvydas* framework. *See id.*; *but see Andrade*, 459 F.3d at 543–44 (finding that petitioner had failed to meet his initial burden when he offered "nothing beyond conclusory statements").

Respondents contend that Petitioners' claims should be dismissed because they have failed to make the two-part showing under *Zadvydas* that they have been detained beyond the six-month presumptively reasonable period and provide a good reason to believe that removal is not likely in the foreseeable future. (Dkt. 21 at 6.)

### 1. Length of Petitioners' Detention

In their motion, Respondents assert that Ms. Zamanpour and Ms. Karimaghaee's habeas action is premature because it was filed prior to the elapse of the six-month presumptively reasonable period for post-removal-order detention established in *Zadvydas*. (Dkt. 21 at 6–8.) Petitioners respond that their petition was filed after 181 days of continuous post-removal confinement, and moreover, Petitioners have now been detained far longer than the presumptive six-month period for post-removal-order detention. (Dkt. 22 at 10–11.)

Courts, including this one, have understood the six-month presumption to be a period of 180 days which comports with DHS's post-removal custody review procedures. *See Sagastizado II*, 2025 WL 2957002, *16; *Villanueva*, 2025 WL 2774610, at *2; *Alfredo v. Warden, Glades Cnty. Det. Ctr.*, 2025 WL 3177203, at *1 (M.D. Fla. Oct. 17, 2025); 8 C.F.R. § 241.4(k)(2)(ii). Ms.

Zamanpour and Ms. Karimaghaee brought their habeas claim on November 18, 2025—exactly 181 days after their removal order became final on May 21, 2025. (Dkt. 22 at 11.) Thus, their habeas petition did not predate the six-month presumptively reasonable period. And regardless, as of the date of this Order, Ms. Zamanpour and Ms. Karimaghaee have been detained far beyond six months since their removal order became final.[3]

Thus, having surpassed the six-month presumption of reasonableness under *Zadvydas*, the analysis shifts to whether Petitioners have provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and whether Respondents have responded "with evidence sufficient to rebut that showing." *Zadvydas,* 533 U.S. at 701.

### 2. Foreseeability of Petitioners' Removal to a Third Country

The Court now turns to whether Petitioners have provided a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and if so, whether Respondents have submitted sufficient evidence to rebut that showing.

Ms. Zamanpour and Ms. Karimaghaee claim that there is no substantial likelihood of removal to a third country in the reasonably foreseeable future for several reasons, including that "[n]either the IJ nor the government designated an alternate country for Ms. Zamanpour and Ms.

---

[3] As in *Sagastizado II*, the Court rejects the argument that a habeas claim must be dismissed when it is brought prior to the conclusion of the six-month presumptively reasonable period. *See* 2025 WL 2957002, at *13 n.3 (rejecting this argument on the ground that there is no "controlling precedent or legal support to indicate that six months must have elapsed *at the time of filing*" and concluding that the six-months period is a rebuttable not preclusive presumption); *see also Villanueva*, 2025 WL 2774610, at *9 ("nothing in *Zadvydas* precludes a challenge to detention before the presumptively constitutional time period has elapsed"); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D. N.J. 2025) (recognizing that the *Zadvydas* presumption is rebuttable and that "[t]o hold otherwise would condone detention in cases where removal is not reasonably foreseeable or even functionally impossible, so long as it did not exceed six months." (citation omitted)).

Karimaghaee's removal, and neither of them have legal residence (or any other immigration status) in an alternate country." (Dkt. 1 at 17.) Additionally, Ms. Zamanpour and Ms. Karimaghaee assert that the rate of removal to third countries is generally low. (*Id.*) Moreover, Petitioners have submitted declarations attesting to their attempts to inquire into DHS's future plans for their removal to a third country and the lack of any definitive timeline or plan to identify a third country for their removal that has been offered. (*Id.*, Attachs. 2, 3.) Finally, Petitioners' point to the length of their continued detention as evidence that removal is not reasonably foreseeable. (Dkt. 22 at 12–15.)

For a petitioner to show that there is "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" the petitioner is not required to "show the absence of any prospect of removal—no matter how unlikely or unforeseeable," *See Gomez v. Mattos*, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025) (quoting *Zadvydas*, 533 U.S. at 701–02). The fact that Ms. Zamanpour and Ms. Karimaghaee have been granted withholding of removal from their native country of Iran in of itself makes their ultimate chances of removal from the United States far less likely. *See Johnson,* 594 U.S. at 537 ("only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country"); *Zavvar v. Scott*, 2025 WL 2592543, at *7 (D. MD. Sept. 8, 2025) ("A grant of withholding of removal 'substantially increases the difficulty of removing' an individual." (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025))).

Moreover, the lack of evidence that DHS has identified a third country willing to accept Petitioners indicates that their removal is even less likely. *See Trejo*, 2025 WL 2992187, at *5 (finding removal not reasonably foreseeable because "ICE has not identified a third country that will accept him"). Accordingly, courts have found under similar factual circumstances that a

petitioner has met their burden by offering proof of a grant of withholding of removal and a lack of assurances that a third country will accept them. *See, e.g., Salazar-Martinez v. Lyons*, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025); *Trejo*, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025); *Garcia-Aleman v. Thompson*, 2025 WL 3534806, at *5 (W.D. Tex. Nov. 24, 2025), *report and recommendation adopted*, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025). Furthermore, several courts have held that a petitioner can meet the initial burden to show "a good reason" only by showing that "the presumptively reasonable six-month period has expired." *Pham v. Bondi*, 2025 WL 3122884, at *1 (W.D. Wash. Nov. 7, 2025) (quoting *Nguyen v. Scott*, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025)); *see also Alexis v. Sessions*, 2018 WL 5921017, at *7 (S.D. Tex. Nov. 13, 2018).

Respondents offer little by way of argument that Petitioners have failed to provide a "good reason to believe" that their removal is not reasonably foreseeable. They note that "[t]he 'reasonably foreseeable future' is not a static concept; it is fluid and country-specific, depending in large part on country conditions and diplomatic relations." (Dkt. 21 at 8) (citing *Ali v. Johnson*, 2021 WL 4897659, at *3 (N.D. Tex. Sept. 24, 2021)). Additionally, they argue that "petitioner must present something beyond speculation and conjecture" such as the "'the circumstances of his status' or the existence of 'particular individual barriers to his repatriation' to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future." *Idowu v. Ridge*, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003) (citation omitted).

Ms. Zamanpour and Ms. Karimaghaee's evidence that they remain detained for a period exceeding six months with their removal to Iran prohibited by law and no alternative claims to citizenship or assurances of any kind that they can be removed to a third country is sufficient to meet this threshold. Thus, upon finding that Ms. Zamanpour and Ms. Karimaghaee have provided

a "good reason to believe" that there is no significant likelihood of removal in the reasonably foreseeable future, the Court turns to Respondents' evidence.

Respondents claim that "ICE avers that there is significant likelihood of removal in the reasonably foreseeable future." (Dkt. 21 at 9.) But Respondents submit no evidence to the Court of any efforts to secure removal other than a statement in a declaration from a Supervisory Detention and Deportation Officer that "ERO is currently working to identify and secure removal for Petitioners to a third country." (*Id.*, Attach. 1 at 2.) Respondents have had over 200 days, or eight months, to work on removing Ms. Zamanpour and Ms. Karimaghaee to a third country since their removal orders became final on May 21, 2025, and have nothing to show for it. Not only is this a far cry from the evidence required to rebut Ms. Zamanpour and Ms. Karimaghaee showing, it raises serious concerns about what Respondents have been doing for the last eight months that Petitioners have remained detained. The lack of any meaningful progress towards removal indicates that removal is not reasonably foreseeable under even the most generous interpretation. *See Misirbekov v. Venegas,* 2025 WL 3033732, at *2 (S.D. Tex. Oct. 29, 2025) (finding that a "lack of progress in removing Petitioner makes removal unlikely in the foreseeable future" for petitioner detained over nine months post-removal.). "[A] remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Balouch v. Bondi*, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025).

Thus, Ms. Zamanpour and Ms. Karimaghaee's continued detention violates due process because there is not a significant likelihood of removal in the reasonably foreseeable future. Ms. Zamanpour and Ms. Karimaghaee have been detained for almost one year, with over 200 days of that detention occurring during the post-removal-period, and Respondents have submitted no evidence of progress in effectuating removal to a third country. Therefore, Petitioners' detention

has become unreasonably prolonged, and their continued detention violates the INA and their rights under the Due Process Clause.

### C. Exhaustion of Administrative Remedies

Alternatively, Respondents argue that the Court should dismiss Petitioners' habeas claims for failure to exhaust administrative remedies under 8 C.F.R. § 241.13, the federal regulation which establishes DHS's internal review process for noncitizens in post-removal-order detention. (Dkt. 21 at 9); *see generally* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56977 (Nov. 14, 2001). Respondents claim that Petitioners' have failed to show that there was an administrative determination by DHS's Headquarters Post-Order Detention Unit (HQPDU) as to whether there is a significant likelihood that Petitioners will be removed in the reasonably foreseeable future prior to the filing of their habeas action in federal court. (Dkt. 21 at 9–11.) In support, Respondents point to several cases dismissing prolonged detention claims for failure to exhaust the available internal agency process for review under 8 C.F.R. § 241.13 prior to filing. *See Parker v. Sessions*, 2018 WL 11491450, at *2 (S.D. Tex. July 16, 2018); *Hung Van Le v. Sessions*, 2018 WL 3361515, at *1–2 (S.D. Tex. July 10, 2018).

As a general matter, "[e]xhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency . . . [t]he exhaustion doctrine also acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court." *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992) *superseded by statute on other grounds as recognized by Woodford v. Ngo*, 548 U.S. 81, 84–85 (2006). "But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* at 144;

*see also Hniguira v. Mayorkas*, 2024 WL 1201634, at *6 (S.D. Tex. Mar. 20, 2024) (citing *Woodford*, 548 U.S. at 82–86)).

Nothing in the text of the relevant habeas statute, 28 U.S.C. § 2241, requires exhaustion. *See Montano v. Texas*, 867 F.3d 540, 542 (5th Cir. 2017). And under the INA, exhaustion of administrative remedies is statutorily required only on appeals from final orders of removal. *See Hniguira*, 2024 WL 1201634, at *6 (citing 8 U.S.C. § 1252(d)(1)); *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, at *6 (W.D. Tex. Sept. 22, 2025). Thus, "there is no statutory requirement to exhaust remedies for [noncitizen] detention claims." *Covarrubias v. Vergara*, 2025 WL 2950096, at *6 (S.D. Tex. Oct. 3, 2025); *see also Buenrostro-Mendez v. Bondi*, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) (same). Therefore, exhaustion in the context of Petitioners' prolonged detention claim is a prudential consideration rather than a statutory or jurisdictional mandate. Moreover, "exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012) (quoting *Fuller v. Rich,* 11 F.3d 61, 62 (5th Cir. 1994)).

Petitioners argue that requiring Ms. Zamanpour and Ms. Karimaghaee to petition DHS for review of their custody status would be futile because the agency can provide no additional information than what has already been offered to the Court to justify Petitioners' continued detention. (Dkt. 22 at 21.) Additionally, they argue that HQPDU is required to review the justification for continuing Ms. Zamanpour and Ms. Karimaghaee's detention under the relevant regulations regardless of any action taken by Petitioners, and HQPDU has failed to undertake that review in a timely manner since more than 180 days of post-removal-period detention have elapsed

without HQPDU initiating the review process. (*Id.* at 22–23) (citing 8 C.F.R. §§ 241.4(c)(1), (k)(2)(ii)). Finally, Petitioners argue that the regulations do not provide a clear timeline for HQPDU to complete the review process once initiated which could allow for Petitioners' detention to stretch on beyond constitutional limits while review remains pending without adequate recourse to challenge it if habeas is prohibited prior to the conclusion of that process. (*Id.* at 23–24.)

In agreement with Petitioners, the Court finds that that the prudential factors weigh in favor in reaching the merits of their *Zadvydas* claim. Requiring Petitioners to take further action in an attempt to compel an additional level of agency review would only continue to prolong their already unreasonable detention without any timeframe for a decision on the reasonableness of their detention to be rendered—raising precisely the fundamental concern about indefinite detention that *Zadvydas* at its core sought to address. Thus, the Court declines to dismiss Petitioners' claims on prudential exhaustion grounds.

### D. Due Process for Third Country Removal

Finally, the Court turns briefly to Petitioners' claim that removal to an undisclosed third country would violate their rights because due process requires that DHS provide them with notice and an opportunity to present a fear-based claim before deportation to a third country. (Dkt. 1 at 19–23.) The Court refrains from considering the merits of Petitioners' arguments at this time because their claim is premature. As of the date of this Order, Respondents have not indicated that they will imminently remove Petitioners to an undisclosed third country without providing them with notice and an opportunity to present a fear-based claim. (*See* Dkt. 21, Attach. 1) ("ERO is currently working to identify and secure removal for Petitioners to a third country") Thus, the Court will stay Petitioners' final claim for adjudication at a later date.

Having considered the applicable law and pertinent facts, the Court holds that Ms. Zamanpour and Ms. Karimaghaee's continued detention has become unreasonably prolonged in violation of the INA and their right to due process because there is not a significant likelihood of removal in the reasonably foreseeable future. Thus, Petitioners' release from custody is mandated.

## Conclusion

For the forgoing reasons, Petitioners' Emergency Petition for Writ of Habeas Corpus, (Dkt. 1), is GRANTED. Respondents' Response to Emergency Petition for Writ of Habeas Corpus and Motion to Dismiss, (Dkt. 21), is DENIED.

Respondents are hereby ORDERED to release Petitioners from custody on or before **December 26, 2025**, subject to reasonable conditions of supervision. Respondents are also ORDERED to notify Petitioners' counsel of the exact location and exact time of their release as soon as practicable and **no less than three hours before release**. The Parties must notify the Court of the status of Petitioners' release any conditions of supervision by **5 P.M. Central Standard Time (CST) on Monday, December 29, 2025.**

The Court's prior Order, (Dkt. 9), that Respondents must provide at least **ten (10) days'** written notice, including the name of the proposed country of removal and confirmation that the third country has agreed to accept the individual Petitioner, to Petitioners, their counsel, and this Court, prior to removal, REMAINS IN PLACE. The Court further ORDERS that Petitioners cannot be re-detained without a material change in circumstances.

IT IS SO ORDERED.

SIGNED this December 24, 2025.

Diana Saldaña
United States District Judge